IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT SWIGER,

    Plaintiff,                                  08cv1387

                                              **ELECTRONICALLY FILED**

    v.

THE HARTFORD

    Defendant.

**ORDER OF COURT**

**I.    Introduction.**

Plaintiff Robert Swiger's complaint seeks short term disability ("STD") and long term disability ("LTD") benefits from the Hartford Insurance Company ("Hartford"), claim administrator for Kirby Electric Inc.'s (plaintiff's former employer) welfare benefits plan, pursuant to section 1132 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. As is the customary practice in such cases, and with the parties' consent, the issues have been joined by cross motions for summary judgment. After careful consideration of the respective motions for summary judgment and the briefs in support and in opposition, and the administrative record before the Hartford, the court will grant summary judgment in favor of Hartford.[1]

**II.    Factual Background.**

**The Policies.**

At relevant times, Robert Swiger was the CFO - Vice President of Finance for Kirby

---

[1] On summary judgment, plaintiff now seeks only a remand for defendant to consider certain medical records that were not part of the administrative record before it at the time it rendered its final determination denying STD and LTD.

Electric, Inc. ("Kirby").  Kirby sponsored an LTD policy (originally insured through CNA Group Life Assurance Company) and an STD policy. Both the LTD Policy and the STD Policy provide that Hartford has "sole discretionary authority . . . to determine [an insured's] eligibility for benefits and to interpret the terms and provisions of the plan and any policy issued in connection with it."

The STD Policy states that Disability means a person is: (1) continuously unable to perform the material and substantial duties of his or her own occupation; and (2) not gainfully employed.  The LTD Policy provides that Disability means that a person is: (1) unable to perform the material and substantial duties of his or her own occupation, or to engage in any occupation following the first 24 months of benefits; and (2) not gainfully employed.

The STD and LTD Policies also provide that "You will be required to provide signed authorization for Us to obtain and release all reasonably necessary medical, financial or other non-medical information which support Your Disability claim".  The Policies further provide that the insured, as part of the proof of disability, must submit proof that the insured is receiving appropriate and regular care of a doctor.  Finally, the Policies provide that coverage is only available to full-time employees of Kirby who satisfy other requirements outlined in the Policies.

**The Claim.**

Mr. Swiger's employment at Kirby was terminated on January 28, 2005 for excessive absenteeism.  Mr. Swiger's coverage under the Policies terminated when his employment was terminated; plaintiff contends that he was disabled within the meaning of the Policies on and before his termination date.

The administrative record contains medical records ranging from September 13, 2004 -

September 26, 2005. In 2004, Mr. Swiger was treated for depression by Dr. Aster Assefa. Dr. Assefa reported that plaintiff "feels good" and that his depression was "very controlled" and "stable". These are the only medical records in the file that predate the onset of Mr. Swiger's alleged disability. Those records do not specifically mention alcohol abuse or any complications arising therefrom.

Plaintiff saw Dr. Assefa the week after his termination for a urinary tract infection and his depression was described again as "stable." Mr. Swiger did not see Dr. Assefa again until June 27, 2005, and his depression remained "stable." No mention is made in these records of alcohol abuse or related impairments. On August 29, 2005, seven (7) months after he had discontinued working, Dr. Assefa's office notes state that Mr. Swiger was admitted to Passavant Hospital for variceal bleeding and alcohol rehabilitation on August 14, 2005. Dr. Assefa's August 29, 2005 office notes are the first-medical records to mention that Mr. Swiger suffered from esophageal variceal bleeding and ligation, and alcohol abuse. On that same day, August 29, 2005, Mr. Swiger filed a claim for STD and LTD benefits stating that he was disabled due to "variceal bleeding, depression and ETOH abuse".

With respect to that application, Dr. Assefa reported that Mr. Swiger was first treated for all three conditions on July 2, 2004, although Dr. Assefa's records do not mention alcoholism or variceal bleeding until August 2005. Dr. Assefa further noted that Mr. Swiger could not return to work because he could not handle the level of stress at his work.

**The Denial of STD and LTD.**

By letters dated November 3, 2005, Hartford denied Mr. Swiger's claim for STD and LTD benefits on the basis that Mr. Swiger was not disabled under the terms of the Policies

3

because Mr. Swiger's medical records reflected that the only condition for which he was being treated when his employment with Kirby was terminated was depression, which was described as stable, not disabling. As required by the applicable ERISA regulations, Hartford informed Mr. Swiger that he had 180 days from the date of the denial - (i.e., by May 2, 2006) to appeal its decision, and invited Mr. Swiger to submit additional medical information for Hartford to consider.

On March 28, 2006, plaintiff called Hartford and indicated that he had "not requested an appeal yet" and that he would "be sending additional medical information . . . for review." Hartford instructed Mr. Swiger "to forward [the] request for appeal when he sends the medical information" and he confirmed he would do so. On May 1, 2006, Mr. Swiger appealed the initial denial, and explained that he was "gathering additional information to forward," but that he had been delayed because he had been hospitalized most of April, and was released April 25, 2006. Mr. Swiger did not, however, explain why he had not gathered documents in support of his appeal between November 2005 and April 2006. Moreover, Mr. Swiger indicated he "was in the process of gathering additional information . . . ." Plaintiff's Concise Statement of Material Facts (doc. no. 40), ¶ 7.

Hartford informed Mr. Swiger he had an additional 44 days, or until June 14, 2006, to provide the additional medical records he had described in support of his appeal. Mr. Swiger did not submit any additional information in support of his appeal, and by letter dated June 15, 2006, Hartford informed Mr. Swiger that it would begin the appeal process for his LTD benefits. Mr. Swiger did not respond to that letter. By letter dated July 5, 2006, Hartford upheld its decision based on the information in the Administrative Record.

On September 25, 2007, Mr. Swiger attempted to submit additional information to Hartford in support of his claim. Hartford informed Mr. Swiger that it issued its appeal decision "based on a complete and final administrative record" and that there were no "provisions for additional appeals or re-opening the administrative record after a final appeal determination." As a result, Hartford did not reconsider its determination and returned the additional information Mr. Swiger submitted.[2]

**III.     Standards.**

**A.     Summary Judgment Standards.**

Summary judgment under Fed.R.Civ.P. 56(c) is appropriate "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Woodside v. Sch. Dist. of Philadelphia Bd. of Educ.*, 248 F.3d 129, 130 (3d Cir. 2001) (*quoting Foehl v. United States*, 238 F.3d 474, 477 (3d Cir.2001) (citations omitted)). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to, draw all reasonable inferences, and resolve all doubts, in favor of the nonmoving

---

[2] The supplemental submission consists of medical records plaintiff has filed under seal at (doc. no. 42), which are identified as Exhibits 1-6. Defendant has filed a motion to strike (doc. no. 47) these exhibits because they are not part of the administrative record before it. This Court will deny the motion to strike without awaiting plaintiff's response, inasmuch as Hartford's determination must be reviewed without regard to the additional medical records set forth in said exhibits.

5

party. *Doe v. County of Centre, PA*, 242 F.3d 437, 446 (3d Cir. 2001); *Woodside*, 248 F.3d at 130; *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 151 (3d Cir. 1999). Further, the court must not engage in credibility determinations at the summary judgment stage. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (*quoting Fuentes v. Perskie*, 32 F.3d 759, 762 n.1 (3d Cir. 1994)).

      **B.**    **ERISA Standards.**

A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) of ERISA is judicially reviewed under a de novo standard "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where, as here, the plan grants an administrator discretionary authority to construe the terms of the plan or to determine eligibility for benefits, however, courts ordinarily may reverse the denial of benefits only if the administrator's decision was "arbitrary and capricious." *Id.* at 115. See also *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d 40, 44-45 (3d Cir. 1993) ("Because Hoffmann's Long-Term Disability Benefits Plan . . . gives Hoffmann, as plan administrator, the discretion to make eligibility determinations under the Plan, the district court correctly applied the deferential arbitrary and capricious standard of review required under *Firestone Tire and Rubber Co. . . .*"). This standard of review applies to an administrator's interpretations of the language of the plan as well as to its factual determinations. *Mitchell v. Eastman Kodak, Co.*, 113 F.3d 433, 438 (3d Cir. 1997). *Firestone Tire & Rubber Co.* further elaborated as follows:

> [W]e need not distinguish between types of plans or focus on the motivations of plan administrators and fiduciaries. Thus, for purposes of actions under §1132(a)(1)(B), the de novo standard of review applies regardless of whether the

> plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest. Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a "facto[r] in determining whether there is an abuse of discretion." Restatement (Second) of Trusts § 187, Comment d (1959).

*Firestone Tire & Rubber Co.*, 489 U.S. at 115.

*Metropolitan Life Ins. Co. v. Glenn*, ___ U.S. ___, 128 S.Ct. 2343 (2008), has substantially altered the standard of judicial review of an administrator's decision to deny ERISA Plan disability benefits by disapproving the sliding scale - heightened standard of review recognized by the United States Court of Appeals for the Third Circuit in *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000). The Supreme Court's ruling in the *Glenn* case clarifies that, under *Firestone Tire & Rubber Co.*, a structural conflict is but one of many structural and procedural factors to consider under the traditional arbitrary and capricious standard of review, along with the following non-exhaustive factors: sophistication of the parties; information accessible to the beneficiary; financial arrangement between the employer and administrator; financial status of the administrator; and the administrator's claim evaluation process, procedural irregularity, bias, or unfairness in the claims review process. In the ERISA context, "abuse of discretion" and "arbitrary and capricious" essentially are the same standard of review. *Estate of Schwing v. The Lilly Health Plan*, ___ F.3d ___, 2009 WL 989114 at *3, n.2 (3d Cir. 2009) (recognizing that *Glenn* has disapproved the *Pinto* heightened sliding scale approach).

Here, the Policies specifically grant Hartford "sole discretionary authority . . . to determine [an insured's] eligibility for benefits and to interpret all terms and provisions of the plan and any policy issued in connection with it." While the Hartford is subject to a substantive

7

conflict of interest because it both determines eligibility and then also pays disability benefits, the conflict is not strong as plaintiff has offered no evidence of bias in this or other cases nor, except for the one issue he raises, any procedural irregularities in Hartford's decision in this case. Hartford's determination is subject to the arbitrary and capricious, or abuse of discretion, standard of review, considering the various factors outlined above. Under that standard, this Court may overturn Hartford's decision "only if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya*, 2 F.3d at 45 (quotations and citations omitted).

When evaluating Hartford's determination, the record before this Court is limited to the evidence that was before Hartford at the time it made the benefits decision at issue. *Marciniak v. Prudential Fin. Ins. Co. of Am.*, 184 Fed. Appx. 266, 269 (3d Cir. 2006) ("This Court has made it clear that the record for arbitrary and capricious review of ERISA benefits denial is the evidence that was before the plan administrator at the time of the benefit denial, which cannot be supplemented during litigation."); *Abnathya*, 2 F.3d at 48 n.8. See also *Sollon v. Ohio Cas. Ins. Co.*, 396 F. Supp. 2d 560, 586 (W.D. Pa. 2005) (citations omitted) ("A plan administrator does not have a duty to gather information in addition to that submitted with the claim.").

**IV.  Application.**

In the instant case, although the policies in question state that the claimant "will be required to provide signed authorization for Us to obtain and release all reasonably necessary medical, financial or other non-medical information which support Your Disability claim," this language cannot be taken out of context as the same paragraph continues: "Failure to submit this information may deny, suspend, or terminate Your benefits." Elsewhere, the policies require a

claimant, as part of the proof of disability, to submit proof that the insured is receiving appropriate and regular care of a doctor for the impairments claimed to be disabling.

Hartford made its determination on the administrative record before it, which contained no evidence of any disabling impairment, but gave plaintiff a meaningful opportunity to supplement that record before it entered a final decision on appeal. Plaintiff did not submit that supplemental information within the additional time allotted, and the Hartford issued its final determination. Based on the record before it at the time, this Court cannot say that Hartford abused its discretion or acted arbitrarily and capriciously in denying STD or LTD benefits.

Plaintiff relies too heavily on the relevant policy language regarding proof of disability (i.e., that the claimant "will be required to provide signed authorization for Us to obtain and release all reasonably necessary medical, financial or other non-medical information which support Your Disability claim"). The Policies also require plaintiff to provide Hartford with proof that he was receiving Appropriate and Regular Care from a doctor to establish that he was disabled to become eligible initially to receive LTD benefits, and to provide such information to establish Continuing Proof of Disability. Hartford informed plaintiff that he could submit additional records with such proof which it would consider before finally deciding his appeal.

The record that was before Hartford shows that plaintiff was not disabled as of January 2005 - the date Mr. Swiger ceased working - due to alcoholism, variceal bleeding, or depression. Rather, plaintiff's medical records reflected that in January 2005, he was not being treated for alcoholism or variceal bleeding, and that his depression was controlled and stable. Plaintiff argues that the administrative record "is devoid of any of Mr. Swiger's inpatient or outpatient treatment and rehabilitation records" and that Hartford should have known such records existed

9

and that it should have obtained them. Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (doc. no. 43) at 3. Specifically, plaintiff states that "Mr. Swiger specifically informed Hartford that 'he suffers from alcoholism/depression for the last couple of years'. (Claim Notes dated 10/21/2005- HLI 0006). . . that he was in ICU for three days at UPMC in Pittsburgh because veins in esophagus burst. . .", and that he "recently checked himself into dual diagnostic facility (Greenbriar) on 9/10/05 which is for mental health and alcohol abuse which was recommended by UPMC". (HLI 0006)." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (doc. no. 43) at 3. Plaintiff's statements reference only post termination treatment for his burst veins and alcohol abuse, and do not establish that he was disabled prior to that date for alcoholism or depression or that Hartford had sufficient information to trigger some obligation on its part to locate additional information bearing on his pre termination condition.[3]

Hartford informed Mr. Swiger that he had 180 days from the date of the initial denial, or by May 2, 2006, to submit a formal request for reconsideration, and invited Mr. Swiger to submit additional medical information for Hartford to consider, and later extended the time within which to submit additional medical records until June 14, 2006. This Court cannot say that Hartford's interpretation of the Policies or its denial of STD and LTD was arbitrary or capricious under these circumstances, where plaintiff was given a meaningful opportunity to supplement the

---

[3] Plaintiff also points to references in Hartford's notes on September 21, 2005, that plaintiff had received in-patient treatment for alcohol abuse in 1998, 2001 and 2003, *id*. at 5, but said treatments did not render him disabled from performing his job functions, inasmuch as he was not terminated until January, 2005. Mr. Swiger's statements to Hartford do not support an inference that any condition for which he sought treatment prior to January 2005 made him unable to perform the material and substantial duties of his job as CFO - Vice President of Finance for Kirby between 2003 and January 2005.

medical record but failed to do so until September 2007, well after the final determination was made.

For all of the foregoing reasons, the Court finds that the STD/ LTD determination was reasonable, and not arbitrary or capricious, and that plaintiff's motion for summary judgment should be denied, and defendant's motion for summary judgment granted. An appropriate Order of Court will be entered.


date: April 30, 2009                                  <u>s/ Arthur J. Schwab</u>
                                                                     Arthur J. Schwab
                                                                     United States District Judge

cc:     All Registered ECF Counsel and Parties